IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOHNNY LEE IVORY, III,

        Plaintiff,

      v.                  CASE NO.  15-3051-SAC-DJW

DAVID PLATT, et al.,

        Defendants.


<u>**MEMORANDUM AND ORDER**</u>

    Plaintiff filed this pro se civil rights complaint under 42 U.S.C. § 1983 when he was a federal pretrial detainee.  He has since been convicted and is serving his lengthy federal sentence.  Plaintiff sues the County District Court Judge who issued a wiretap order on his cell phones and the County District Attorney ("D.A.") who submitted the wiretap application.  He seeks damages and unspecified injunctive relief.  For the reasons that follow, the court dismisses the complaint pursuant to 28 U.S.C. § 1915A(a) and (b) and 28 U.S.C. § 1915(e)(2)(B) mainly because plaintiff states no claim for relief and seeks damages from defendants that are immune from suit for damages.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

    In the "final months of a thirteen-month investigation into a suspected narcotics-trafficking conspiracy," investigators

1

obtained several wiretap orders in the District Court of Geary County, Kansas. *United States v. Banks, Ivory, et al.*, 2014 WL 4261344, *1-2 (D.Kan. Aug. 29, 2014).[1]  Geary County District Court Judge Platt issued the wiretap orders under the Kansas wiretap statutes, K.S.A. 22-2514, *et seq*.  Law enforcement officers also used confidential informants, surveillance, and search warrants.  "The investigation was a joint effort" by the KBI, the Junction City Police Department, the Geary County Sheriff's Office, and the Riley County Police Department. *Id.* Initially, the investigation centered on Albert Banks and Anthony Thompson.  See *United States v. Ivory*, 13-cr-40060-DDC-5 (D.Kan.)(hereinafter "Crimcase") Motion to Suppress (Doc. 338) at 1.  Judge Platt issued the first "state authorized wiretap intercept" order on a phone used by Mr. Ivory on April 2, 2013.[2] *Banks*, 2014 WL 4261344 at *2.

In April or May of 2013, Judge Platt granted an application for a search warrant for the residence at 3139 SE Michigan Avenue in Topeka, Kansas that belonged to Ivory's mother.  See *United States v. Ivory et al.*, 2015 WL 2401048, *8 (D.Kan. May 15, 2015).  On May 13, 2013, officers executed the warrant and

---

[1]    Mr. Ivory and Mr. Banks were two of ten defendants in the federal prosecution.

[2]    The area codes for Ivory's two phones were 929, which is an area in New York City and 307, which is Wyoming.  The application was signed by KBI Special Agent Glen Virden.  Crimcase, Motion to Suppress Contents of Unlawfully Intercepted Communications (Doc. 339) at *2.

seized crack cocaine, drug paraphernalia, and ammunition. *Id.*
On May 29, 2013, Mr. Ivory and nine other defendants were named
in a federal indictment alleging conspiracy to distribute crack
cocaine along with individual counts of crack cocaine
distribution and firearms violations.   *Id.*

During federal pretrial proceedings, Ivory and his co-
defendants filed numerous motions to suppress evidence obtained
through wiretaps, intercepted text messages, and residential
search warrants.[3]  These motions were eventually determined by
the trial court in a series of complicated orders.   In Ivory's
initial motions to suppress wiretap evidence, he argued that
Judge Platt's wiretap orders were facially deficient because the
applications failed to demonstrate probable cause.   The trial
court rejected this ground as follows:

---

[3]      In one motion to suppress filed in June 2014, Ivory argued that nothing
in the wiretap order established that the tapped phone was used by him or
"the place where[] authority to intercept is granted."   Crimcase (Doc. 339)
at 8.   In another motion, Ivory contended that the two applications for cell
phone authorizations on his phones "were based in part upon information
received after the authorizations were granted to tap into Banks' and
Thompson's phones, and he moved to suppress "all conversations between Banks
and Ivory as well as Thompson and Ivory."   (Doc. 341) at 1.   Mr. Ivory also
filed a pretrial motion arguing that the search warrant in his case was
invalid because the supporting affidavit failed to establish probable cause
to search the residence and there was no nexus between the suspected criminal
activity and the place to be searched.   *Id.*   In another, he "reiterated the
same arguments and claimed "that they apply with greater force once the Court
removes the suppressed phone calls from the affidavit."   *Id.*   In his March
2015 motion (Doc. 585), Ivory claimed that the original search warrant
affidavit was "replete with references to phone calls which are known to be
inadmissible" that must be erased from the affidavit, and that the resulting
"redacted" affidavit" lacks any sufficient evidence of probable cause" to
search the Michigan Avenue residence.   *Id.* at 2-3.   He asked the federal
trial court to suppress all evidence obtained from that search and "all
evidence obtained as the 'fruit' of that search."   *Id.* at 3.

> Both the Kansas and federal statute require an issuing
> judge to determine that probable cause exists to
> believe a targeted individual is committing, has
> committed, or is about to commit a particular
> enumerated offense, and that interception will reveal
> (communications) about that particular offense.
> K.S.A. § 22-2518(3); 18 U.S.C. § 2518(3). The Court
> already has held that narcotics distribution and
> conspiracy to distribute narcotics are crimes for
> which a wiretap order may issue. Doc. 445. The Court
> now holds that that each application demonstrated
> sufficient probable cause that defendants committed or
> were comitting those crimes.

*United States v. Banks, Ivory, et al.,* 2014 WL 5321075 at *6
(D.Kan. Oct. 17, 2014).

Ivory and other defendants also argued that the trial court
should suppress wiretap evidence because, as plaintiff alleges
here, "agents intercepted communications outside the territorial
jurisdiction of the judge who authorized the wiretaps."
Crimcase Memorandum and Order (Doc. 517) at *1 (D.Kan. Nov. 19,
2014). On August 21, 2014, the federal trial court held a
suppression hearing and ruled from the bench. The court later
memorialized its rulings in a Memorandum and Order. See *id.*
The trial court found that "a Kansas state court judge acting
under Kansas law has no authority to authorize interception
outside the judge's own judicial district." *Id.* It reasoned
that K.S.A. 22-2516(3) of the Kansas wiretapping statutes
authorized Judge Platt to enter a wiretap order only within his
"territorial jurisction;" that Geary County is in the Eighth

4

Judicial District along with Dickinson, Marion, and Morris counties (see K.S.A. 4-209); that the Kansas legislature had thus authorized Judge Platt to issue a wiretap order in those four counties only; and that Mr. Ivory resided in Topeka, Kansas, which is in the Third Judicial District (see K.S.A. 4-204). The court ruled that it "could not sustain" Judge Platt's wiretap orders because the monitoring was done in Topeka outside the judge's territorial jurisdiction and the Government did not provide evidence as to where the "intercepting device" was located. *Id.* at *3-4. The court concluded that "Kansas law required it to suppress any phone call intercepted outside Kansas' Eight Judicial District." *Id.*

In additional complicated orders, the trial court considered the motions of Ivory and his co-defendants to suppress evidence obtained with search warrants as "derivative of suppressed phone calls." See *United States v. Banks, Ivory*, et al., 2015 WL 2401048 (D.Kan. May 15, 2015); see also *United States v. Banks*, et al., 93 F.Supp.3d 1237, 1240 (D.Kan. Feb. 23, 2015). The trial court exhaustively analyzed cases and "identified three ways that a wiretap could fall within Judge Platt's territorial jurisdiction."[4] *Id.* It ruled that one of

---

[4] The court commented that "[t]o its surprise," it was "unable to locate any written decision addressing the situation presented here" and that none of the cases it discussed "resolves squarely whether a judge may authorize interception of phones located in his district even though the monitoring

the following "must have been physically present within Kansas'
Eighth Judicial District at the time a call was intercepted:"
(1) "the monitoring station (the location where law enforcement
first hears the intercepted communications)," (2) the
intercepting device, or (3) the tapped phones.[5]   See *Banks*, 93
F.Supp.3d at 1240.   The court found that the first option was
nullified in Ivory's case because the monitoring station was at
the KBI headquarters in Topeka and that the government never
"invoked" the second option.   The court "ordered that it would
suppress the wiretap evidence . . . unless the government could
prove that the tapped phones were physically located within the
Eighth Judicial District at the time of interception."   See *id*.
The trial court's standards on "derivative evidence" and its
analysis are instructive here and thus quoted at length:

> Both the federal wiretap statute, commonly called
> "Title III," and Kansas' wiretap statute, which
> largely tracks its federal counterpart, require the
> Court to suppress unlawfully intercepted wire and oral
> communications and any "evidence derived therefrom."
> 18 U.S.C. § 2515; K.S.A. § 22-2517.   The motions filed
> by Mr. Banks, Mr. Ivory, and Mr. Thompson ask the
> Court to find that certain search warrants "derived
> from" suppressed phone calls because the warrant
> applications relied, at least in part, on suppressed
> wiretap evidence to establish probable cause....   To
> resolve defendants' motions, the Court will determine,

---

room is located outside of it." *Id.* at 1243.

[5]    The court noted that "the cases differ on the question whether the
location of the tapped phone, the location of the intercepting device, or
both also suffice as a basis for intercepting a call within a given judge's
jurisdiction." *Id.*

> first, what portions of the affidavit derive from
> suppressed evidence. Next, it will construct a
> reconstituted affidavit consisting only of the
> evidence untainted by the wiretap violation. Last,
> the Court will consider whether probable cause
> supported a search of targeted residences based solely
> on the information in the reconstituted affidavits.

*Banks*, 2015 WL 2401048, at *2-3. The trial court applied its

formula, removed the suppressed calls from the search warrant

application in Mr. Ivory's case, and "reconstituted" the

affidavit to include only evidence that survived its suppression

order. The court concluded that the information remaining in

the reconstituted affidavit "still provided Judge Platt with a

substantial basis to find probable cause to issue a search

warrant."[6]  *Id.* at *9. That search warrant produced physical

evidence of Mr. Ivory's offenses. *Id.* at *8-9.

---

[6]    The court described in detail the events that remained in the affidavit
after the suppressed phone calls were removed:

> The reconstituted affidavit describes Mr. Ivory's relationship
> with Albert Banks and other members of the suspected conspiracy.
> Doc. 585 at 22-25. It also describes his history of drug
> trafficking, including an officer's seizure of a half-pound of
> marijuana, two handguns and nearly $10,000 in United States
> currency, *id.* at 22, 26, and a drug transaction between Mr. Ivory
> and an individual named Padarthi Satish that officers observed
> while conducting physical surveillance. *Id.* at 26. Mr. Satish
> met Mr. Ivory at the 3139 Michigan residence only ten days before
> the warrant issued. *Id.* Mr. Ivory briefly entered Mr. Satish's
> vehicle before returning to his residence, and officers conducted
> a traffic stop on Mr. Satish's vehicle after he departed the
> residence. *Id.* They found marijuana and drug paraphernalia in
> Mr. Satish's vehicle. *Id.* The Court finds that the description
> of these events in the affidavit established a substantial basis
> to believe Mr. Ivory used the 3139 Michigan residence to conduct
> a drug sale just ten days before the warrant issued. Courts have
> held that one observed drug transaction is sufficient to
> establish probable cause to search the place where it occurred.
> (Citation omitted). Also, our Circuit has found probable cause

On March 13, 2015, Mr. Ivory filed this pro se civil rights complaint asserting only that Judge Platt and D.A. Opat violated his constitutional rights under the Fourth Amendment.[7]   He alleged only the following facts in support.   Defendant Judge Platt in Kansas' Eighth Judicial District issued a wiretap order outside his territorial jurisdiction on plaintiff who resided in Kansas' Third Judicial District; and defendant Opat, District Attorney in the Eighth Judicial District, "applied for a wiretap on plaintiff's cell phone in the 3rd judicial district" which was "outside defendant (sic) territorial jurisdiction."   Plaintiff asks this court to declare that the "acts and omissions of the defendants" violated "plaintiff's rights."   He also asks the court to grant "injunctive relief commanding the defendants to award Plaintiff compensatory damages for the unnecessary emotional suffering, defamation of character,"[8] and punitive damages of no "less than 7 million."

---

based on a single observed drug transaction, the suspect's criminal history, and surveillance of the suspect's residence that revealed persons arriving just for short periods of time. *United States v. Liapis*, 216 F. App'x 776, 780 (10th Cir. 2007).

*Id.* at *8-9.

[7]    In his background statement, plaintiff claims that defendants violated his "constitutional rights and state law," but he specifies no state law.

[8]    Plaintiff's mention of defamation of character is not supported by any facts whatsoever in either the complaint or plaintiff's responses, and is dismissed without further discussion.

On June 23, 2015, with this civil action pending, a jury convicted Mr. Ivory in federal court of conspiracy to distribute crack cocaine, possession with intent to distribute crack cocaine, and felon in possession of a firearm. The trial judge sentenced Mr. Ivory to 240 months in prison.[9]

On July 21, 2015, this court issued a Notice and Order to Show Cause (NOSC) to plaintiff requiring him to show why this action should not be dismissed for the following reasons: (1) his claim against defendant Platt is barred by judicial immunity, (2) his claim against defendant Opat is barred by prosecutorial immunity, (3) he failed to state a claim under § 1983;[10] and (4) he could not use this § 1983 complaint to invalidate any state charge that may remain pending against him.

## PLAINTIFF'S RESPONSES

In response to the NOSC, plaintiff submitted three pleadings on August 31, 2015: "Statement of Facts" (Doc. 5), "Memorandum of Law in Support of Statement of Facts" (Doc. 6),[11] and "Motion to Amend Additional Defendants" (Doc. 7). In his

---

[9] On October 7, 2015, Mr. Ivory filed a direct appeal in his criminal case which remains pending.

[10] The court found that plaintiff's assertions that defendants violated Kansas laws failed to state a claim of federal constitutional violation and thus failed to state a claim for relief under § 1983.

[11] The clerk docketed these two pleadings as plaintiff's Response and Memorandum of Law in Support of Response.

Statement of Facts plaintiff does not cure or even address any
deficiency set forth in the NOSC.   Instead, he makes many new
allegations and claims that were not presented in his original
complaint[12] and seeks relief from persons and entities not named
as defendants in any caption[13] that were not mentioned in the

---

[12]    Plaintiff makes the following additional allegations in his
"Statement": defendant Opat participated in authorizing the wiretap order by
signing the "order of authorization;" the wiretap order did not give KBI
agents authority to intercept plaintiff's calls outside the issuing court's
jurisdiction; all of plaintiff's intercepted calls were suppressed because
all took place outside the issuing court's jurisdiction; in May 2013
defendants and law enforcement officials disclosed "illegal" wiretap evidence
obtained from plaintiff's "wire communications" to the United States
Attorney; and that evidence was used in plaintiff's federal prosecution; and
defendants used the federal government to cover up their violations of state
wiretap law and constitutional violations in state court.  Plaintiff adds the
following with respect to text messages.  Neither Judge Platt's wiretap order
nor the application authorized Sprint/Nextel to intercept text messages,
which are not wire communications; therefore Sprint/Nextel forwarded
plaintiff's private text messages to KBI headquarters without authority; and
KBI agents and law enforcement officials conducted surveillance on plaintiff
based on information obtained from the illegal interceptions of his text
messages.  Plaintiff attempts to add the following legal claims in his
"Statement": defendants' violated state wiretap law which is a violation of
federal law; disclosure of the evidence obtained from plaintiff's "wire
communications" by defendants and law enforcement officials to the United
States Attorney violated federal law; in June 2013 plaintiff was taken into
federal custody based on evidence disclosed "in violation of 18 U.S.C. §
2511(1)(c);" and the federal trial court's ruling that all calls on
plaintiff's telephones were outside the Eighth Judicial District meant the
interceptions were "illegal under federal and state law."  In this Statement,
plaintiff omits his request for injunctive relief.  He makes the following
additional statements with respect to "Damages."  Judge Platt caused damage
to plaintiff in that plaintiff has been incarcerated since the illegal
wiretap order and "defendant's life, liberty, and property have been
restrained."  As a direct result of Judge Platt's 4th Amendment violation,
plaintiff faced a possible 20 year sentence based on that evidence.  The
plaintiff suffered and is "continuously suffering" from defendants'
violations of the federal wiretap statute.  Plaintiff added the following to
his "Request for Relief:" a declaratory judgment that defendants violated his
rights; compensatory damages for unnecessary deterioration of his physical
condition and for pain and suffering; punitive damages from defendants and
others, and damages for up to $10,000 for "violation of the Electronic
Communications Privacy Act under 18 U.S.C. 2520 per violation of 18 U.S.C.
2511(1)(c)."

[13]    A complaint, whether original or amended, must name all the defendants

original complaint. This Statement is an improper and ineffective attempt by plaintiff to amend his complaint. It is not a complete amended complaint and was not submitted upon court-approved complaint forms.

On March 16, 2016, the court issued an order denying plaintiff's single-page "Motion to Amend Additional Defendants" (Doc. 7), which simply listed 4 defendants and asked that they "be amended to the complaint." Plaintiff did not address any deficiency in his original complaint in this motion. The court's denial was without prejudice "pending" Mr. Ivory's "compliance with court rules for amending the complaint." The court informed plaintiff that an amended complaint completely supersedes the original complaint and "therefore must name all parties and contain all claims the plaintiff intends to pursue in the action including those raised in the original complaint." Order (Doc. 8) at 1. Plaintiff was further advised that a motion to amend must have the proposed amended complaint attached and the amended complaint must be upon court-approved forms.[14] *Id.*

Plaintiff's "Memorandum of Law in Support of Statement of Facts" (Doc. 6) also sets forth many new allegations and claims

---

in the caption. See Rule 10, Federal Rules of Civil Procedure.

[14]    D.Kan Rule 9.1(a).

that were not in the original complaint.[15]   Like his other
responses, this document is not a complete, proper amended
complaint upon forms.   It therefore did not effectively add any
of the new allegations, claims, causes of action, or parties
mentioned therein.   Mr. Ivory did not even sign these three
responsive pleadings.

---

[15]   Plaintiff makes the following additional allegations and claims in his
Memorandum.   Since Platt's wiretap orders in plaintiff's case were invalid
under Kansas law, plaintiff has established a violation of federal wiretap
law, and defendants are liable for damages.   Over 50 law enforcement officers
signed the authorization order, which shows a "policy between all the
defendants involved in the authorization order."   Defendants allowed the
illegally obtained information to be disclosed to the AUSA, and all are
responsible for this illegal disclosure.   Text messages are "electronic
communications" not "wire communications."   "Defendants" requested, defendant
Opat applied for and defendant Platt authorized "Sprint/Nexel and Verizon" to
"intercept wire communications" not text messages.   "Defendants" received
text messages from Ivory's phone and should have notified "Sprint/Nextel"
that they did not request text messages.   The ECPA prohibits the interception
or disclosure of electronic communication, citing 18 U.S.C. § 2511(1) and
imposes criminal and civil liability, citing 18 U.S.C. § 2520.   Good faith
exception does not apply because defendants did not rely on the request of a
law enforcement officer given that all defendants either requested or
authorized the wiretap order.   "[T]he order was not permitted under federal
law" (citing 18 U.S.C. 2518(3)) because it allowed interceptions outside the
court's jurisdiction (citing 18 U.S.C. 2516(2)).   The order violated state
laws, citing K.S.A. 22-2516(3)(territorial jurisdiction), K.S.A. 22-
2516(9)(a)(ii)(invalid order), 18 U.S.C. § 2511(disclosure of evidence), and
18 U.S.C. § 2517(testimony received in hearings from unlawfully intercepted
communications).   Plaintiff correctly notes that federal law requires
deference to state law on the question of the validity of the wiretap order.
He also argues that federal wiretap law trumps state wiretap law and that
violation of a federal wiretap law is a violation of the Fourth Amendment.
The "order of authorization" did not give KBI agents authority to monitor or
intercept plaintiff's calls from Topeka, and the KBI did not rely on a court
order when they intercepted plaintiff's calls outside the issuing court's
district.   Plaintiff repeats other new allegations from his Statement.   On
August 22, 2014, the federal trial court ruled that if plaintiff's tapped
phone was within the Eighth Judicial District at the time of interception
that phone call would be admissible, but if it were not, that call would be
inadmissible.   All of plaintiff's calls were in the Third Judicial District.
Plaintiff cites an attachment here and elsewhere, but no document was
attached to this pleading.

The court does not simply construe plaintiff's Statement or his "Motion to Amend Additional Defendants" or his Memorandum as his first amended complaint as of right because none of these pleadings is a complete amended complaint. If the court had construed one or as plaintiff's first amended complaint, all claims, allegations or parties not included from the original complaint would not have survived. The court invited plaintiff to submit an amended complaint in "compliance with court rules for amending the complaint" and advised him of those rules, but he has never submitted a complete amended complaint. Consequently, the court is not compelled to address any of the additional claims, allegations or defendants mentioned only in plaintiff's responsive pleadings.

Even if the court construed one or all of plaintiff's responses as his first amended complaint, he fails therein to state a claim against any of the additional entities and persons mentioned. The Tenth Circuit recently reviewed a pleading nearly identical to plaintiff's "Statement of Facts"[16] with a similar Memorandum attached that was submitted by co-defendant Banks in his somewhat-similar Section 1983 action for damages against Platt and Opat. See *Banks v. Platt*, Case No. 14-3199-SAC (D.Kan. November 14, 2015) Response (Doc. 6). The Tenth

---

[16]    In fact, one might suspect that Mr. Banks or another co-defendant provided the pleading to Mr. Ivory.

Circuit reviewed these pleadings with others in Banks's case on appeal and found as follows:

> Because Mr. Banks is bringing his claims pursuant to § 1983, his Amended Complaint "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." The Amended Complaint must therefore "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" as to the specific constitutionally impermissible actions allegedly committed by each named defendant....

*Banks v. Geary Cty. Dist. Court*, 645 Fed. App'x 713, 716 (10th Cir. 2016)(citations omitted). The Circuit Court in *Banks* observed that:

> it is particularly important in a § 1983 case brought against a number of government actors sued in their individual capacity that the complaint make clear exactly who is alleged to have done what to whom as distinguished from collective allegations.

*Id.* at 718 (citing *Brown v. Montoya*, 662 F.3d 1152, 1165 (10th Cir. 2011)). In Ivory's Memorandum, he alleges that over 50 law enforcement officers signed the authorization order and that various groups of persons and entities intercepted or disclosed allegedly illegal wiretap evidence. However, plaintiff's allegations in his responses clearly "fail to isolate the allegedly unconstitutional acts of any other proposed defendant." *Id.* at 718. Mr. Ivory does not individually name each individual participant and describe unconstitutional acts by each one. As noted, plaintiff's motion to add a few

14

defendants included no description whatsoever of those proposed defendants' acts. The Tenth Circuit also specifically considered Mr. Banks' motion to amend or consolidate his § 1983 cases to add challenges to the propriety of the state wiretap used to gather evidence against him and found that because "Mr. Banks's Proposed Second Amended Complaint fails to cure the deficiencies in his Complaint" the district court's dismissal was appropriate. *Id.* In the instant case, like in *Banks*, plaintiff's allegations in his responses do nothing to cure the deficiencies in his original complaint.

**LEGAL STANDARDS**

**General Standards of Review**

Plaintiff is proceeding pro se, and is therefore entitled to have the court liberally read his pleadings. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this requirement does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based. *Id.* The allegations in the complaint "must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008).

**Wiretap Laws**

The Supreme Court has held that "conversation" is within the Fourth Amendment's protections and that the use of electronic devices to intercept conversation is a "search" within the meaning of the Fourth Amendment. See *Berger v. State of New York*, 388 U.S. 41, 51 (1967). Where the constitutionality of wiretap evidence is properly raised in a case, the Federal Wiretap Act, Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510 et seq. ["Title III"], generally applies. Title III incorporates the Fourth Amendment's protections by placing probable cause and particularity conditions on the issuance of a wiretap. The Kansas wiretap statutes are located within the Kansas statutes on Search and Seizure and were "patterned after" those in the Federal Wiretap Act.

**Judicial Immunity**

The United States Supreme Court has observed the following with respect to the doctrine of judicial immunity:

> "Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction." *Pierson v. Ray*, 386 U.S. 547, 553-554, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967). The Court specifically has pronounced and followed this doctrine of the common law for more than a century. In *Bradley v. Fisher*, 13 Wall. 335, 20 L.Ed. 646 (1872), it ruled that a federal judge may not be held accountable in damages for a judicial act taken within his court's jurisdiction.

16

*Cleavinger v. Saxner*, 474 U.S. 193, 199-200 (1985); *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982)(citing *Stump v. Sparkman*, 435 U.S. 349 (1978)); *Mireles v. Waco*, 502 U.S. 9, 9 (1991). "[P]ublic officers require this protection to shield them from undue interference with their duties and from potentially disabling threats of liability." *Harlow*, 457 U.S. at 807. "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). "If judicial immunity means anything, it means that a judge 'will not be deprived of immunity because the action he took was in error. . . or was in excess of his authority.'" *Mireles,* 502 U.S. at 12-13 (citing *Stump*, 435 U.S. at 356; see also *Forrester v. White*, 484 U.S. 219, 227 (1988)(a judicial act "does not become less judicial by virtue of an allegation of malice or corruption of motive")); *Cleavinger*, 474 U.S. at 199-200 (citing *Bradley*, 13 Wall at 347)(Judicial immunity applies "however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff.")). The Supreme Court's "cases make clear that judicial immunity is overcome in only two sets of circumstances:"

> First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not

17

> immune for actions, though judicial in nature, taken
> in the complete absence of all jurisdiction.

*Mireles*, 502 U.S. at 11-12 (citations omitted); *Mitchell*, 472 U.S. at 526.  As the Supreme Court has explained, "the necessary inquiry in determining whether a defendant judge is immune from suit is whether at the time he took the challenged action he had jurisdiction over the subject matter before him."  *Stump v. Sparkman*, 435 U.S. at 356.  "A judge may act in excess of his subject matter jurisdiction and still retain absolute judicial immunity."  *Snell v. Tunnell*, 920 F.2d 673, 694 (10th Cir. 1990).  "[O]nly in the unusual circumstances of complete and clear absence of all jurisdiction is absolute immunity inappropriate."  *Id.*; *Reid v. Pautler*, 36 F.Supp.3d 1067, 1185 (D.N.M. 2014).

Even though "absolute immunity always comes at a price" in that an individual "wrongly deprived of liberty or property by a judge's decision will be unable to pursue a remedy under the civil rights statute," the aggrieved party is not without recourse.  *Valdez v. City and County of* Denver, 878 F.2d 1285, 1289 (10th Cir. 1989).  The proper procedure in most cases for a party wishing to contest the legality of a court order is to appeal that order, not to sue the official responsible for its execution.  See *Reid v. Pautler*, 36 F.Supp.3d 1067, 1124-25 (D.N.M. 2014)(citing *id.* at 1289-90).

**Prosecutorial Immunity**

The defense of absolute immunity "has been extended to 'certain others who perform functions closely associated with the judicial process.'" *Cleavinger*, 474 U.S at 199-200. "Full immunity . . . has been given to federal and state prosecutors." *Id.* at 200 (citing *Yaselli v.* Goff, 275 U.S. 503 (1927); *Imbler v. Pachtman*, 424 U.S. 409, 424-26 (1976)). A state prosecuting attorney is absolutely immune from suit for damages under § 1983 for his or her conduct "in initiating a prosecution and in presenting the State's case" in court. *Id.* at 410, 430-31; *Glaser v. City & Cnty. Of Denver, Colo.*, 557 Fed. App'x 689, 704 (10th Cir. 2014). Furthermore, a prosecuting attorney may be "at the very least entitled to qualified immunity for his role in (plaintiff's) prosecution" unless the plaintiff alleges facts showing that the prosecutor "violated a clearly established constitutional right." *Banks*, 645 Fed.Appx. at 718.

## DISCUSSION

**Official Capacity Claims**

The court dismisses plaintiff's claims, if any, against defendants in their official capacity. Any such claim would be a claim against the State that is barred by Eleventh Amendment Immunity.

**Injunctive Relief**

19

The court dismisses plaintiff's vague claim for injunctive relief for failure to state a claim. In his complaint, plaintiff does not specify what injunctive relief he seeks other than for the court to "command" defendants to award damages to him. This request is thus nothing more than a restatement of plaintiff's request for damages. Plaintiff alleges no facts indicating his entitlement to injunctive relief, and in his "Statement" he rewrites his prayer for relief with no mention of it. Furthermore, as the Tenth Circuit's observed in a co-defendant Banks' case, Mr. Ivory's claim for injunctive relief is precluded by the following amendment to § 1983:

> Pursuant to the Federal Courts Improvement Act of 1996, § 1983 now provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. It is clear from the face of Mr. Banks's pleadings that neither statutory exception applies.

*Banks*, 645 Fed.App'x at 717.

**Fourth Amendment Claim**

The court dismisses plaintiff's claims of Fourth Amendment violations because he fails to state adequate facts in support. His Fourth Amendment assertion is nothing more than a legal conclusion or formulaic recitation. Plaintiff supports this claim with only his bare allegations that the wiretap order was

20

illegally issued outside defendants' territorial jurisdiction. He alleges no facts to suggest that defendants lacked probable cause or failed to satisfy the particularity conditions for the issuance of the wiretap order.

But even if plaintiff alleged such facts, this claim would fail. As set out earlier, in plaintiff's criminal prosecution he fully argued through defense counsel that the wiretap orders were facially deficient because the applications failed to demonstrate probable cause. See Crimcase (Doc. 490) at 11-12. As already noted, the federal trial court determined that "each application demonstrated sufficient probable cause that defendants committed or were committing" particular "crimes for which a wiretap order may issue" (*id.*) and that the reconstituted affidavit "provided Platt with a substantial basis to find probable cause to issue a search warrant."

In any event, the Fourth Amendment's exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges." *U.S. v. Leon*, 468 U.S. 897, 915 (1984). Furthermore, the Supreme Court has fashioned a good faith exception to Fourth Amendment violations under circumstances where, as here, a detached and neutral judge found probable cause for the search and law enforcement acted with a good faith reliance upon that court order. *Id.* at 926. In addition, the

normal remedy for violation of the Fourth Amendment in a criminal case is suppression of any evidence obtained during the illegal search.   See *Mapp v. Ohio*, 367 U.S. 643 (1961). Plaintiff was afforded this remedy with respect to all of his calls that might have been intercepted outside the court's judicial territory.

Most significantly, the court finds for reasons that follow that defendants are entitled to immunity on all plaintiff's damages claims.

**Immunity**

This court found it obvious from the face of plaintiff's original complaint that defendant Platt is entitled to absolute judicial immunity.   Accordingly, it ordered plaintiff to show cause why his damages claims against Platt should not be dismissed on this basis.   At the start of plaintiff's Memorandum, he attempts to address this crucial finding in the NOSC.   He could not and does not plausibly contend that Judge Platt's issuance of the wiretap order was not a judicial act. See *Burns v. Reed*, 500 U.S. 478, 492 (1991)("[T]he issuance of a search warrant is unquestionably a judicial act.").   Instead, plaintiff contends that Judge Platt is not entitled to immunity because his issuance of the wiretap order was "taken in complete absence of all jurisdiction."   He reasons that Judge Platt had

no authority to issue a wiretap order on plaintiff's phones outside the Eighth Judicial District because the State of Kansas does not give its district court judges the power to issue an extraterritorial wiretap.

With regard to the jurisdictional inquiry, the Supreme Court has instructed as follows:

> [T]he scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge. A judge will not be deprived of immunity because the action he took was in error,.. or was in excess of his authority; rather, he will be subject to liability only when he has acted in the "clear absence of all jurisdiction."

*Stump*, 435 U.S. at 356-57, (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351, (1871))(footnote omitted). The Sixth Circuit provided the following specific example of this judicial inquiry:

> For example, a criminal court judge would be immune from liability for convicting a defendant of a nonexistent crime, an act taken in excess of jurisdiction, whereas a probate court judge would not be immune for trying a criminal case, an act for which the probate judge clearly lacked all subject matter jurisdiction. *Stump*, 435 U.S. at 357 n. 7, 98 S.Ct. at 1105 n. 7.

*Ireland v. Tunis*, 113 F.3d 1435, 1441 (6th Cir. 1997). The situation in the present case much more closely resembles the former scenario for which absolute immunity is mandated. Mr. Ivory makes the bald statement that Judge Platt acted in the absence of all jurisdiction, but he alleges no facts to

23

substantiate this contention.   Mr. Ivory does not deny that Judge Platt issued a wiretap order as part of an investigation into a drug-trafficking conspiracy, and the record in his criminal case shows that Judge Platt had probable cause to believe that this conspiracy was operating within his judicial territory.   Plaintiff alleges nothing more than that the judge mistakenly issued an extraterritorial wiretap order in Ivory's case.   The Supreme Court has warned that "[i]f only the particular act in question were to be scrutinized, then any mistake of a judge in excess of his authority would become a 'nonjudicial' act," and that the court must "look to the particular act's relation to a general function normally performed by a judge." *Mireles*, 502 U.S. at 12-13.

The issuance of a wiretap order in Kansas is normally a function performed by its district judges.   District courts in Kansas are courts of general jurisdiction having original jurisdiction over all matters except those specifically excluded by law.   K.S.A. 22-2515(a) provides that an "order authorizing the interception of a wire, oral or electronic communication may be issued by a judge of competent jurisdiction," and that a district attorney "may make an application to any judge of competent jurisdiction" for such an order.   K.S.A. 22-2516(1) provides that "[e]ach application for an order authorizing the

interception of a wire, oral or electronic communication shall be made . . . to a judge of competent jurisdiction." K.S.A. 22-2516(3) provides that upon application and a finding of probable cause, the judge may enter an order authorizing a wiretap "within the territorial jurisdiction of such judge."[17] *State v. Gibson*, 255 Kan. 474, 482, 874 P.2d 1122 (Kan. 1994). K.S.A. 22-2514(8) provides that a "'judge of competent' jurisdiction means a justice of the supreme court, a judge of the court of appeals or any district judge but does not include a district magistrate judge."[18] Judge Platt undoubtedly fits Kansas's definition of a judge of competent jurisdiction. See also *Adams v. Lankford*, 788 F.2d 1493, 1499, n. 12 (11th Cir. 1986). Thus, defendant Platt's judicial act of issuing a wiretap order in plaintiff's case lay squarely within a Kansas district judge's subject matter jurisdiction. This remains true even if Platt's

---

[17]   18 U.S.C. § 2518(3) similarly provides that upon application the judge may enter an order authorizing interception of wire, oral, or electronic communications within the territorial jurisdiction of the court in which the judge is sitting," but then Congress added "(and outside that jurisdiction but within the United States in the case of a mobile interception device authorized by a Federal court within such jurisdiction)."

[18]   18 U.S.C. § 2518(1) provides that each "application for an order authorizing" the interception of wire or electronic communication shall be made "to a judge of competent jurisdiction." 18 U.S.C. § 2510(9)(b) defines a "judge of competent jurisdiction as "any court of general criminal jurisdiction authorized by state court to authorize wiretaps." The state and federal wiretap laws vary however in that 18 U.S.C. § 2516(2) requires that a federal court defer to state law on the question of the validity of a wiretap order obtained in state court. *U.S. v. Edwards*, 69 F.3d 419, 428 (10th Cir. 1995)(citing *United States v. Tavarez*, 40 F.3d 1136, 1137 (10th Cir. 1994)). Plaintiff presents no authority for his argument that the issuance of a wiretap that violates the state-law territorial limits must be treated as a violation of federal law as well.

order was subsequently determined in plaintiff's federal prosecution to have resulted in the wiretapping of calls on phones located outside the Eighth Judicial District. Judge Platt's error, if any, in issuing a wiretap order on plaintiff's phones despite plaintiff residing outside the Eighth Judicial District was at most a procedural violation of state law or an act taken in excess of his territorial jurisdiction, neither of which is sufficient to overcome judicial immunity.[19]

---

[19]    The trial court in considering suppression motions in plaintiff's criminal case found the following, which illustrates the lack of clarity in the existing law:

> In this case, some of the phones were located within Judge Platt's judicial district, but the monitoring room was not. In *Gibson*, and the wiretap cases it cites, the monitoring location was within the issuing judge's jurisdiction, but the tapped phones, or other equipment, were not. See *id.* at 1123; *Burford*, 755 F.Supp. at 610 (S.D.N.Y. 1991)(monitoring station was located within the judge's jurisdiction, but some of tapped phones were located outside of it); *United States v. Rodriguez*, 734 F.Supp. 116, 120 (S.D.N.Y. 1990) *aff'd*, 968 F.2d 130 (2d Cir. 1992)(same); *Evans v. Georgia*, 252 Ga. 312, 314 S.E.2d 421, 424 (1984)(same). In this sense, the facts presented in those cases are the converse of the facts here. Each of these cases concludes what this Court already has acknowledged—if the monitoring station is located within a judge's jurisdiction, then that judge may authorize wire intercepts, even for phones located outside the judge's district. To its surprise, the Court has been unable to locate any written decision addressing the situation presented here—the converse of *Gibson*, *Burford*, *Rodriguez*, and *Evans*. As a result, none of these cases resolves squarely whether a judge may authorize interception of phones located in his district even though the monitoring room is located outside of it. The Court is therefore left with the task of deciphering whether, as defendants assert, these cases imply such a limitation. The cases suggest conflicting answers to this question. All agree that a judge may authorize wiretaps if his jurisdiction extends to the location law enforcement monitors the calls. But the cases differ on the question whether the location of the tapped phone, the location of the intercepting device, or both also suffice as a basis for intercepting a call within a given judge's jurisdiction.

The court also dismisses this action for damages against District Attorney Opat because he is entitled to prosecutorial immunity. See *Banks v. Geary County District Court, et al.*, 645 Fed.Appx. 713, 717 (10th Cir. 2016). Plaintiff's bare arguments in his responses do not show otherwise. He argues that defendant Opat is not entitled to prosecutorial or qualified immunity for the following reasons: (1) when a prosecutor conducts investigative work normally performed by police, he is not performing a prosecutorial function; (2) the Kansas legislature made it clear in K.S.A. 22-2516(9)(a)(ii) that it is illegal to issue an order outside the jurisdiction of the authorizing court and the wiretap order violated this clearly established law; (3) defendant Opat "violated plaintiff's federal right by signing the invalid order," and (4) defendants are not immune because their actions were "forbidden by clearly established constitutional law."

The Supreme Court has specifically held that a state prosecuting attorney is absolutely immune from § 1983 liability for his or her "appearance as a lawyer for the State in the probable-cause hearing" where he or she "successfully supported the application for a search warrant" which led to the issuance of a search warrant. *Burns v.* Reed, 500 U.S. 478, 483 (1991).

---

*U.S. v. Banks*, 93 F.Supp. at 1242-43.

Here, like in *Burns*, Mr. Ivory sues defendant Opat due to his participation in the probable cause hearing for the wiretap order.  Plaintiff does not attack Opat's motivation in seeking the wiretap authorization or his conduct outside the courtroom relating to the wiretap application.  *Id.* at 487.  The Supreme Court in *Burns* reasoned that a prosecutor's absolute immunity extends to "any hearing before a tribunal which perform[ed] a judicial function." *Id.* at 490.  The Court cited its prior holdings that "a prosecutor is absolutely immune for initiating a prosecution and for presenting the State's case," and "the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution." *Burns*, 500 U.S. at 490-91 (citing *Imbler*, 424 U.S. at 431).  They reasoned that "[t]he prosecutor's actions at issue here-appearing before a judge and presenting evidence in support of a motion for a search warrant-clearly involve the prosecutor's 'role as advocate for the State,' rather than his role as 'administrator or investigative officer.'" *Id.* at 492.  They further reasoned that "since the issuance of a search warrant is unquestionably a judicial act" (citing *Stump*, 435 U.S. at 363, n. 12), "appearing at a probable-cause hearing is "intimately associated with the judicial phase of the criminal process," *id.* (citing *Imbler*, 424 U.S. at 430), and "is also connected with

the initiation and conduct of a prosecution." *Id.* at 492; see also *Kalina v. Fletcher*, 522 U.S. 118, 129 (1997)("activities in connection with the preparation and filing of . . . the information and the motion for an arrest warrant-are protected by absolute immunity."). The Supreme Court concluded in *Burns* that the prosecuting attorney's "appearance in court in support of an application for a search warrant and the presentation of evidence at that hearing are protected by absolute immunity." *Id.* at 492. Defendant Opat's actions at the probable cause hearing on the wiretap application in plaintiff's case are plainly analogous to a prosecutor's actions at a probable cause hearing on a search warrant, and Opat's presentation of the application was clearly related to the judicial phase of the criminal process. The court concludes that defendant Opat's acts upon which the complaint is based are protected by absolute immunity.[20]

In *Burns*, the Supreme Court also noted, as it has in other immunity cases, that the judicial process is available as a check on prosecutorial actions at a probable-cause hearing" and that "the safeguards built into the judicial system tend to reduce the need for private damages actions as a means of

---

[20]    Even if the wiretap application could be considered within the investigative rather than the judicial phase of Ivory's prosecution, as plaintiff baldly claims, qualified immunity also protects a prosecutor's actions in his official capacity.

controlling unconstitutional conduct." *Burns*, 500 U.S. at 492 (citations omitted). This case is clearly one that demonstrates that "the judicial process is largely self-correcting: procedural rules, appeals, and the possibility of collateral challenges obviate the need for damages actions to prevent unjust results." *Ireland*, 113 F.3d at 1443 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 522-23 (1985)). Mr. Ivory successfully utilized the "procedural safeguard" of motions to suppress evidence available in his underlying criminal case. Those processes served as an appropriate check on Judge Platt's exercise of his presumptive authority to issue a wiretap order and on defendant Opat's authority to apply for that order. *Id.*

**Claims of Violations of State and Federal Wiretap Statutes**

The court repeats that it is not compelled to determine plaintiff's claims that wiretap laws were violated by various groups and entities because these claims were mentioned only in his responsive pleadings and were never raised in a proper amended complaint despite the court's invitation to plaintiff. Nonetheless, the court has reviewed these additional claims and comments that even if they had been presented in a timely and proper amended complaint, they fail to state a plausible claim for relief.[21] No doubt, plaintiff's factual allegations in his

---

[21]   Plaintiff makes contradictory claims first that Judge Platt's wiretap

complaint that defendant Opat applied for and defendant Platt issued a wiretap order outside their territorial jurisdiction could be very liberally read to suggest the legal claim of a violation of wiretap laws, even though plaintiff only asserted the Fourth Amendment in his complaint and cited no federal or state wiretap provision.[22]  However, for the following reasons, the court is not convinced that plaintiff would be entitled to damages even if he had alleged and could prove facts showing that defendants violated the state wiretap provision that contains the territorial limitation.

First, "territorial jurisdiction" is clearly a question of state law.[23]  Plaintiff was informed in the NOSC that violations of state law are not grounds for relief under Section 1983.  The federal trial judge in plaintiff's criminal case determined that

---

order was overbroad and then later that Platt's order did not authorize the allegedly illegal wiretaps that were performed by law enforcement, Sprint/Nextel and others, or the monitoring of his calls by the KBI.

[22]   The court may not "construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

[23]   Interestingly, residential search warrants issued by Kansas district court judges, which generally target fixed structures rather than mobile devices, have no such limitation and are executable statewide.  K.S.A. 22-2503(b)(1) provides that search warrants "issued by a district judge may be executed anywhere within the state."  See *State v. Robinson*, 303 Kan. 11, 115 (2015) "([it] is evident the (Kansas)legislature intended for district judges to retain their pre-code authority to issue search warrants executable statewide."); see also *State v. Adams*, 2 Kan.App.2d 135, 138, 576 P.2d 242 (unlike electronic eavesdropping statute, nothing in the search and seizure statutes limits the power of district judges to issue warrants within territorial jurisdiction); *United States v. Aikman*, 2010 WL 420063, at *6 (D.Kan. 2010)(unpublished)(no territorial limit on search warrant issued by district judge under K.S.A. 22-2503).

the Kansas wiretap statute was more restrictive than the federal statute, found that the state district court had authorized the wiretap request only under the Kansas statute, then suppressed that evidence obtained in violation of the Kansas law.   Judge Platt's order, even if it was issued outside his territorial jurisdiction as defined by state law, is not shown to have amounted to a federal statutory or constitutional violation. Moreover, even if plaintiff could show that the Federal Wiretap Act was violated, he alleges no facts indicating that this territorial-jurisdiction error "implicate(s) a core concern" of the wiretap statute.   See *Adams*, 788 F.2d at 1500, n. 13.   In *Adams*, the Eleventh Circuit considered a habeas petitioner's claims that the county attorney and the state judge violated federal wiretap statutes when they issued wiretap orders outside their judicial circuit that led to evidence against the petitioner.   The Circuit Court focused its inquiry "on whether the asserted title III violations are merely formal or technical errors, or whether the alleged violations implicate the core concerns of Title III."   Id. at 1497.   They assumed the existence of a Title III violation, and examined the federal wiretap statutes in question: 18 U.S.C. 2516(2) and 18 U.S.C. 2518(3).   The court held that the county judge was clearly a judge "of competent jurisdiction" as required by the statute and

was empowered to authorize wiretaps on phones. *Id.* at 1498 (citing 18 U.S.C. § 2510(9)(b)). They noted the only error was that the judge and the county attorney "were not in the same county as the tapped phones." *Id.* They found that even if the federal provisions statutes were violated, the violations did not impinge upon the "core concerns" of Title III, which are (1) protecting the privacy of wire and oral communications and (2) delineating uniform circumstances and conditions under which wire and oral interceptions may be authorized. *Id.* at 1498-99. The Circuit Court also noted the "flexibility built into" both these sections, which "implicitly delegate to the states the job of defining the territorial parameters of each section" and leave it to the states to define political subdivisions. *Id.* They reasoned that neither Section 2518(3) nor its legislative history "provide any indication as to what Congress intended by the phrase 'territorial jurisdiction, except that it is clear that Congress intended that state law would define the 'territorial jurisdiction of each state court.'" *Id.* The Eleventh Circuit Court concluded that "given this deference to state law" and Congress not having countered this uncertainty by defining "territorial jurisdiction" for wiretapping purposes, "core congressional concerns do not include the matter of the Fulton County District Attorney and the Fulton County Superior

Court Judge authorizing a wiretap of a telephone located in a nearby county." *Id.* at 1500. The court agrees with the reasoning of the Eleventh Circuit on this issue.

Second, plaintiff presents no authority, and the court finds none, to suggest that the provisions for a damages remedy in the wiretap statutes are available against a judge that issued a wiretap order based on a showing of probable cause. They are more likely to apply to a state district attorney alleged to have violated wiretap laws, but Mr. Ivory alleges no real facts that were known at the time of the wiretap application showing that defendant Opat violated state or federal wiretap laws. In any event, absolute immunity protects against damages claims under any law not just 42 U.S.C. § 1983.

Third, even if plaintiff could somehow show that defendants violated federal wiretap laws, are subject to the damages remedy thereunder, and are not entitled to absolute immmunity, defendant are surely entitled to good faith immunity. K.S.A. § 22-2518(1) provides that "[a]ny person whose wire, oral or electronic communication is intercepted, disclosed or used in violation of this act" shall have a civil cause of action for actual and punitive damages and attorney fees. *Id.* However, subsection (2) of § 2518 provides that:

> [a] good faith reliance by any person on a court order
> authorizing the interception of any wire, oral or

> electronic communication shall constitute a complete
> defense in any civil . . . action brought against such
> person based upon such interception.

See *Reid*, 36 F. Supp. 3d at 1123-24.  18 U.S.C. § 2520(a);(b)(2)

in the Federal Wiretap Act likewise authorizes recovery of civil

damages for illegal interception of wire, oral or electronic

communications.  However, § 2520(d)(1),(2) provides that a good

faith reliance on a "court warrant or order" or "a request of an

investigative or law enforcement officer" is "a complete defense

against any civil or criminal action brought under this chapter

or any other law."[24]  The wiretap at issue in Mr. Ivory's case

was requested by law enforcement officers and authorized by

court order.  Plaintiff identifies no false or deceptive conduct

by the prosecutor or any other law enforcement officers in the

preparation and presentation of the application.  See

*Messerschmidt v. Millender,* 2012 WL 555206, 132 S.Ct. 1235

(2012).  He thus describes none of the "rare circumstances" that

would make it appropriate to impose personal liability on an

official or an officer in the face of judicial approval of a

warrant.  *Id.* at 1250.  Furthermore, plaintiff has not

established that Judge Platt's order violated any clearly

established law at the time it was issued, and Judge Crabtree's

---

[24]    Thus, even if the state and federal statutes containing the suppression
remedy for illegal wiretapping do not contain a good-faith exception, *Banks*,
2015 WL 2401048 at *4 (citations omitted), the sections that provide for
damages remedy do.

orders reflect that the law remained unclear at the time of the federal prosecution.

Fourth, courts have held that "[u]nder Title III, Congress has already balanced the social costs and benefits and has provided that suppression is the sole remedy for violations of the statute." U.S. v. *Rice*, 478 F.3d 704, 713 (6th Cir. 2007). In addition, 18 U.S.C. § 2517 authorizes investigative and law enforcement officers to disclose information to one another:

> "[a]ny investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire, oral, or electronic communication, or evidence derived therefrom, may disclose such contents to another investigative or law enforcement officer to the extent that such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure."

*Id.*

Finally, the court again finds it very significant that plaintiff seeks damages based upon arguments in his responses that are the same as those he presented to the trial court and that were determined by that court. The arguments he lost at trial may even be before the Tenth Circuit Court of Appeals in plaintiff's direct appeal. To any extent that plaintiff may be attempting in this action for damages to relitigate issues already decided against him in his criminal case, he is barred from doing so by well-established Supreme Court precedent. In

his responses, plaintiff alleges that he has been damaged by his confinement.  In his "Statement of Facts" he alleges that Judge Platt damaged him because plaintiff's "life, liberty, and property have been restrained and plaintiff has been incarcerated since Judge Platt" ordered the "illegal wiretap." He additionally alleged that he was "facing a possible 20 years sentence based on evidence the federal court received" as a "result of Judge Platt's 4th Amendment violation and the illegal disclosure of the wiretap evidence to the United States Assistant Attorney."  In his "Memorandum" he alleges that he "has been incarcerated in federal custody for over two years" based on "these constitutional violations."  He seeks compensatory and punitive damages "for the unnecessary deterioration" of his physical condition as well as pain and suffering.  Despite his bald implications, Mr. Ivory has alleged no facts showing that he was or is illegally confined. His pretrial detention was pursuant to an arrest warrant and federal indictment, and his current confinement is authorized by his federal convictions and sentence.  Plaintiff simply may not litigate any claim in this civil rights complaint for damages that would undermine or invalidate his federal criminal convictions.  Habeas corpus is the exclusive remedy for such challenges.  *Preiser v. Rodriguez*, 411 U.S. 475, 476-77, 500

(1973).    In   order   to   recover   damages   for   allegedly unconstitutional  imprisonment  or  conviction  or  for  other  harm caused  by  actions  whose  unlawfulness  would  render  a  conviction or  sentence  invalid,  "a  §  1983  plaintiff  must  prove  that  the conviction  or  sentence  has  been  reversed  on  direct  appeal, expunged  by  executive  order,  declared  invalid  by  a  state tribunal  authorized  to  make  such  determination,  or  called  into question  by  a  federal  court's  issuance  of  a  writ  of  habeas corpus."  *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); see *Ippolito v. Justice Service Div.*, 562 Fed. App'x 690 (10th Cir. 2014)(applying  *Heck*  to  civil  claim  involving  pretrial confinement).  A claim for damages bearing that relationship to a  conviction  or  sentence  that  has  *not*  been  so  invalidated  is simply  not  cognizable  under  §  1983.  *Id.*  at  487.  Plaintiff's convictions  have  not  been  invalidated.  The  federal  trial  court suppressed  the  intercepted  communications  after  finding  that  the government  failed  to  prove  they  were  either  intercepted  or monitored  within  the  Eighth  Judicial  District,  but  rejected plaintiff's  corollary  arguments  that  there  was  no  probable  cause to  issue  warrants,  that  he  could  not  be  lawfully  convicted,  and others.  Any  constitutional  or  federal-law-based  challenges  that plaintiff  may  have  to  his  federal  convictions  must  first  be litigated  in  his  direct  appeals.  Thereafter,  Mr.  Ivory's  habeas

corpus remedy would be by motion in the sentencing court under 28 U.S.C. § 2255.

For all the foregoing reasons, the court dismisses this action pursuant to 28 U.S.C. § 1915A(a) and (b) and 28 U.S.C. § 1915(e)(2)(B).

**IT IS THEREFORE BY THE COURT ORDERED** that this action is dismissed and all relief is denied without prejudice.

**IT IS SO ORDERED.**

Dated this 11th day of October, 2016, at Topeka, Kansas.


**s/Sam A. Crow**
**U. S. Senior District Judge**